**186 So. 346**

**COLEMAN v. POLLOCK et al.**

**No. 35038.**

Jan. 10, 1939.

Rehearing Denied Feb. 6, 1939.

Dhu Thompson, of Monroe, C. E. Barham, of Ruston, and Breazeale & Sachse, of Baton Rouge, for appellants.

W. M. Pollock, of Mansfield, for appellees.

ROGERS, Justice.

This is an appeal from a judgment rejecting the demands of the plaintiff and interveners to be recognized as owners and to be sent into possession, as such, of an undivided one half interest in a tract of land situated in the Parish of Lincoln.

The facts, as developed in the record, show that Ben F. Franklin and Etta Banks were married on January 5, 1889, and that the plaintiff and interveners were born of this marriage. On January 2, 1895, Ben F. Franklin acquired, by patent from the United States Government, the W½ of SW¼ of Section 5, and the NE¼ of SE¼ of Section 6, Township 20 North, Range 4 West, containing 120 acres, more or less, in Lincoln Parish. On December 6, 1918, Franklin obtained a judgment of divorce against his wife, Etta Banks Franklin, in the Fourth Judicial District Court of Lincoln Parish, and on December 24, 1918, he married Lou Reynolds. On April 9, 1919, Franklin, by an act under private signature duly acknowledged before a notary public, conveyed to D. A. Pollock, for a consideration of $569, the same 120 acres of land which he had acquired from the United States Government. This deed was duly recorded in the conveyance records of Lincoln Parish. On November 22, 1924, D. A. Pollock conveyed to Ben Franklin, for a consideration of $40, the NW¼ of SW¼ of Section 5, Township 20 North, Range 4 West, containing 40 acres, more or less. This deed was duly recorded in the conveyance records of Lincoln Parish. Etta Banks died in the year 1925, leaving the plaintiff and the three interveners as her only heirs. D. A. Pollock died in the year 1935, leaving his widow, Mrs. Emma Pollock, and seven children, the issue of a previous marriage to Willa Jane Pollock.

On August 31, 1937, plaintiff, as a child and heir of Etta Banks Franklin, brought this suit against the widow and children of D. A. Pollock to be recognized as the owner of her mother's undivided one half community interest in the 80 acres of land retained by D. A. Pollock out of the original 120 acres of land that he had acquired from Ben F. Franklin. The 80 acres of land involved in this suit is situated in the Lisbon Oil Field in Lincoln Parish and is described as the SW¼ of SW¼ of Section 5, and the NE¼ of SE¼ of Section 6, Township 20 North, Range 4 West.

Cora Kimball and Sarah Mack, sisters of the plaintiff, and Birl Franklin, her brother, intervened and joined her in this suit, and in the trial of the case all were treated as plaintiffs and will be hereinafter referred to as such.

Defendants answered plaintiffs' suit, denying that plaintiffs have any interest in the tract of land in dispute, alleging that D. A. Pollock acquired a full and complete title to the property from Ben F. Franklin by a warranty deed, dated April 9, 1919, as recorded in the conveyance records of Lincoln Parish; that he acquired the property in good faith by a title translative of the whole property, for a good and valuable consideration; that D. A. Pollock, up to the time of his death, and his widow and heirs, since his death, have been in actual, physical, corporeal, open, notorious, quiet and unequivocal possession of the 80 acre tract in dispute, by farming and cultivating the same through tenants and by exercising thereon other acts of ownership and possession, and that they are, or have been for a period of ten years, in full, complete and undisturbed possession of the property as owners, under a legal title, sufficient and translative of the whole property; and defendants specially pleaded the prescription of ten years acquirendi causa in support of their title.

On the issues as thus made up, the case went to trial. After plaintiffs had completed the offer of their testimony in chief, defendants filed a plea, attacking the validity of the judgment of divorce obtained by Ben F. Franklin against Etta Banks Franklin, and in the alternative, a plea of thirty days' prescription against the plaintiffs, predicated on the ground that plaintiffs' mother, Etta Banks Franklin, had failed to accept the community of acquets and gains that had existed between her and Ben Franklin within the period of thirty days allowed for this purpose by Article 2420 of the Civil Code; and that her failure to do so constituted in law a renunciation of the matrimonial community. The codal article was repealed by Act No. 49 of 1926. Plaintiffs filed a plea of estoppel against defendants' attack on the validity of the judgment of divorce. Both pleas were referred to the merits.

The trial judge sustained the plea of thirty days' prescription filed by defendants and rejected plaintiffs' demands. Plaintiffs, as we have hereinabove stated, have appealed from the judgment.

As all the facts are before the Court, which is therefore in a position to render judgment thereon, we have concluded to dispose of this case on defendants' original plea of prescription of ten years acquirendi causa, which we find to be well founded.

■ D. A. Pollock acquired the 120 acre tract of land from Ben Franklin by an act translative of property, and it is presumed that he purchased the property in good faith.

"Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it." Civ.Code, art. 3481.

■ The only testimony offered by plaintiffs to impugn the good faith of D. A. Pollock was the testimony of Ben Franklin and of his son-in-law, Boykin Smith. Ben Franklin testified that he executed the deed to D. A. Pollock in settlement of a debt; that he told Pollock, when he asked him to make the deed, that there

were some heirs entitled to "some of that," and Pollock said that it would be all right, that when he paid the debt they could get their part. He testified that he was in possession of the property when he signed the deed and that he retained possession of it after the instrument was executed. He testified that when he had possession of the property he let Boykin Smith have it and that he told him to let Mr. Pollock have the rent on what he owed on the place. Boykin Smith testified that, in 1918, Ben Franklin was in possession of the property and that, in 1919, he let him work it; that as a tenant of Ben Franklin he paid the rent to D. A. Pollock for four or five years, and thereafter he became the tenant of Pollock, beginning about the year 1923; that from that time until the death of Pollock he farmed and cultivated the property as his tenant, and that since his death he has continued to farm and cultivate the property as a tenant of Pollock's widow and administratrix.

D. A. Pollock is dead and can not speak for himself, but the testimony of the witnesses Franklin and Smith is wholly inconsistent with the conduct of the parties.

The record shows that Boykin Smith moved on the property in 1918, at which time Ben Franklin was also residing thereon. Franklin testified that he retained possession after the sale to D. A. Pollock, but his testimony is not correct. The undisputed evidence shows that Ben Franklin moved away from the property the day after he married Lou Reynolds, which was on December 24, 1918, or a little over three months before he sold it to D. A.

Pollock. The testimony of the notary public, who drew the deed and before whom it was acknowledged, is that Pollock and Franklin came to his office on April 9, 1919, for the purpose of executing the deed; that it was a cash sale, for a consideration of $569; that there was no agreement or understanding about Franklin re-acquiring the property.

The testimony as to the debt, for the payment of which Franklin allegedly conveyed the property to Pollock, is wholly unsatisfactory. The nature, amount and terms of repayment of the alleged debt were not brought out on the trial of the case. Ben Franklin never demanded an accounting from D. A. Pollock and never demanded that the whole property be reconveyed to him on the ground that the alleged indebtedness had been fully satisfied. On the contrary, on November 22, 1924, he repurchased from D. A. Pollock, by notarial act, forty of the one hundred and twenty acres which he had previously sold him. This, in itself, indicates that Franklin believed that Pollock had a valid title to the whole property.

Neither plaintiffs nor their mother, Etta Banks Franklin, ever asserted any interest in the property or in the rents derived therefrom prior to the institution of this suit.

It is not shown that Boykin Smith required the consent of Ben Franklin to become the tenant of D. A. Pollock in 1923, as claimed by him, nor is it shown that Ben Franklin ever protested that Smith was his tenant and not the tenant of Pollock.

The record discloses that from the year 1921 to the date of his death, in 1935, the property was assessed to D. A. Pollock and, after his death, to his estate and that Pollock and his estate paid all the taxes predicated on the assessments. The record also discloses that Mrs. Willa Jane Pollock, who was the first wife of D. A. Pollock and who was living at the time he purchased the property from Ben Franklin, died intestate in Union Parish on December 5, 1920, leaving as her heirs the children born of her marriage to Pollock. By judgment of the Fourth Judicial District Court for the Parish of Union, dated May 15, 1922, the children and heirs of Mrs. Pollock were put in possession of her undivided one half community interest in the property involved in this suit. Subsequently, five of the children, by separate notarial acts, sold their interests in the property to their father, D. A. Pollock. The judgment in the succession proceedings and the acts of sale of the children's interest were duly recorded in the parish records.

The record also discloses that in the years 1923, 1924, 1930, and 1934, D. A. Pollock executed oil and gas leases on the property involved in this suit, all of which leases were duly recorded in the proper offices.

All the acts above referred to clearly show that D. A. Pollock, in good faith, was claiming ownership of the whole property involved in this suit from the date of its purchase by him.

The deed from Ben Franklin to D. A. Pollock contains the declaration that "Ben Franklin, married, whose third wife now living was formerly Lou Reynolds, a resident of Lincoln Parish, La.," etc. Plaintiff argues that this declaration was sufficient notice to put Pollock on inquiry concerning the title to the property. The notary who drew the act testified that this declaration was placed therein by him. Obviously, this was done by the notary in order to comply with Act No. 122 of 1908 requiring notaries public to give the marital status of parties to acts passed before them. There is nothing to show that the attention of D. A. Pollock was directed to this recital in the act and there is nothing in the act that recognizes the rights of others.

A purchaser is not required to examine thoroughly the title tendered him by the vendor in order to be in good faith. New Orleans Auction Exchange v. Vincent, 168 La. 802, 123 So. 331.

There does not seem to be any doubt of the good faith of D. A. Pollock at the date of his purchase from Ben Franklin of the property involved herein.

For the reasons assigned, the plea of ten years' prescription acquirendi causa filed by defendants is maintained, and the judgment of the district court rejecting the demands of the plaintiff and of the interveners is affirmed at their costs.

PONDER, J., dissents.