BOLIN, Judge.
Plaintiff instituted this concursus proceeding for the purpose of determining the ownership of a J4sth royalty interest and the proper distribution of funds attributable to the production of gas and gas condensate underlying forty acres of land in Webster Parish, Louisiana. From judgment recognizing Dr. S. F. Martin as the owner of one-half of the minerals, and E. B. Smith as owner of one-sixth royalty interest of 32.5 acres of the tract, and Shelton Holloway to be the owner of the minerals under the remaining 7.5 acres, Mrs. Helen Holloway Sewell appeals.
The case was submitted upon an agreed stipulation of facts which reflect the following: On October 28, 1944, Dr. S. F. Martin, then owner of the land, conveyed to Carlton Sewell, husband of Helen Holloway Sewell, the forty acres in question, reserving to himself one-half of the minerals. On July 28, 1949, Carlton Sewell sold to E. B. Smith a one-sixth royalty interest affecting the forty acres. On March 28, 1950, the United States of America acquired title to 32.5 acres of the 40-acre tract by expropriation proceedings, but reserved to the owners, their heirs and assigns, all oil, gas and other mineral rights therein.
On June 12, 1954, following a judgment of separation between Carlton and Helen H. Sewell, Mr. Sewell conveyed to Mrs. Sewell the 40-acre tract. On November 15, 1962, Shelton Holloway acquired 7.5 acres of the forty acres from Mrs. Sewell. By separate instruments dated June 2, 1962, and November 5, 1964, Franks Petroleum secured oil and gas leases from Mrs. Sewell and Dr. Martin.
There were no drilling operations on the subject land but on November 10, 1964, an exploratory well, in search of oil and gas, was commenced on the adjoining 40-acre tract. This well was completed December 25, 1964, as a producer of gas and gas condensate. On April 26, 1965, the Louisiana Commissioner of Conservation issued an order unitizing approximately 689 acres of land in Webster Parish, including the forty acres in question.
These events took place after the Louisiana Legislature had enacted Act No. 315 of 1940. This act, though amended in 1958 and 1960, is essentially unchanged in the pertinent portion, now R.S. 9:5806, subd. A, providing as follows:
“A. When land is acquired by conventional deed or contract, condemnation or expropriation proceedings by the United States of America, or any of its subdivisions or agencies from any person, firm or corporation, and by the act of acquisition, order or judgment, oil, gas or other minerals or royalties are reserved, or the land so acquired is by the act of acquisition conveyed subject to a prior sale or reservation of oil, gas or other minerals or royalties, still in force and effect, the rights so reserved or previously sold shall be imprescriptible.”
The question for determination in this case is the effect of the 1950 expropriation proceeding by the United States on the reservation by Dr. S. F. Martin of one-half of the oil, gas and other minerals in his deed to Carlton Sewell on October 28, 1944, as well as the effect of such expropriation judgment on the one-sixth royalty interest conveyed by Mr. Sewell to E. B. Smith on July 28, 1949.
Obviously, but for the expropriation judgment and the provisions of R.S. 9:-5806A, the mineral reservation to Dr. Martin as well as the royalty sale to Mr. Smith would have prescribed for want of use prior to the production and unitization in 1964 and 1965.
The lower court’s ruling was predicated on Franks Petroleum v. Hobbs et al., 200 So.2d 708 (La.App. 2 Cir. 1967, writs refused) . In that case, W. L. Coyle conveyed *270 eighty acres of land to McClellan in 1945. The vendor reserved to himself one-half of the oil, gas and other minerals in and under the land conveyed. Shortly thereafter, McClellan conveyed the land to Hobbs. By judgment dated March 28, 1951, the United States took title to 74.6 acres of the 80-acre tract by expropriation. The judgment reserved to “the owners, their heirs and assigns” all the mineral rights in the land taken. Plaintiff operator acquired leases from both contesting groups of claimants, those claiming under Coyle and those under Hobbs. A producing well was brought in, and royalties were deposited in court in a concursus proceeding.
The Coyle defendants, claiming to be the mineral servitude owners as a result of the reservation in the original conveyance of the land to McClellan, asserted that the provisions of R.S. 9:5806, subd. A were applicable and that their rights under the 74.6 acres taken by the United States were im-prescriptible. Further, relying upon the concept of indivisibility, they claimed the imprescriptibility attaching to the expropriated portion of the tract extended also to the remaining 5.4 acres. The Hobbs claimants asserted the rights outstanding in the Coyle group as of the date of acquisition by the United States Government should be deemed to have prescribed and, under the terms of the judgment by which the United States acquired the 74.6 acres these rights, should be deemed to be vested in them. The argument on behalf of the Hobbs group was based on the premise that the provision in R.S. 9:5806, subd. A. for imprescripti-bility of mineral interests, affecting land acquired by the United States by expropriation, should be applied only in favor of the landowner and not to the owner of an outstanding mineral servitude at the time of acquisition by the United States. However, the court held the land was acquired subject to the prior mineral reservation by Mr. Coyle and that the rights “so reserved” in the prior transaction were, under the unmistakable terms of the statute, impre-scriptible.
We agree with the lower court that the Hobbs case is decisive of the issues presented. We find Dr. Martin is now the owner of one-half of the minerals under that portion of the 40-acre tract expropriated by the United States of America containing 32.5 acres; that E. B. Smith is the owner of a one-sixth royalty interest under the same 32.5 acres. Since 7.5 acres of the 40-acre tract were not included in the land acquired by the United States and the Franks well was not completed as a producer nor the unit formed until more than ten years after the mineral reservation and sale previously mentioned herein, the mineral servitude of Dr. Martin and the one-sixth interest of E. B. Smith as to the 7.5 acres has prescribed and is now owned by the fee owner, Shelton Holloway.
The judgment is affirmed, the cost of this appeal to be paid by appellant, Mrs. Helen Holloway Sewell.